ELECTRONICALLY FILED
2026 Mar 24 12:36 PM
00070437
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

25th JUDICIAL DISTRICT COURT FOR THE PARISH OF PLAQUEMINES

STATE OF LOUISIANA

DOCKET NO.: 70-437                                          DIVISION:B

MADERE & SONS TOWING, L.L.C. AND
DEEP SOUTH CONSTRUCTION & SALVAGE, L.L.C.

vs.

U.S. SPECIALTY INSURANCE COMPANY

FILED: _____     _____
                                                          DEPUTY CLERK

## PETITION FOR DAMAGES AND PENALTIES FOR BAD FAITH

NOW COMES Plaintiffs, Madere & Sons Towing, L.L.C. and Deep South Construction &

Salvage, L.L.C. who file this Petition for Damages and Bad Faith Penalties against U.S. Specialty

Insurance Company, and in support thereof, aver as follows:

### PARTIES

1.      Made Plaintiffs herein are:

    (i)     Madere & Sons Towing, LLC ("Madere"), a Louisiana limited liability

            company, with its principal place of business located at 9266 Highway 23,

            Belle Chasse, Louisiana 70037; and

    (ii)    Deep South Construction & Salvage, LLC ("Deep South"), a Louisiana

            limited liability company, with its principal place of business located at

            9266 Highway 23, Belle Chasse, Louisiana 70037.

2.      Made Defendant herein is U.S. Specialty Insurance Company ("U.S. Specialty"),

an insurance company domiciled in Texas and licensed as a marine and transportation insurer in

Louisiana.

### JURISDICTION AND VENUE

3.      Jurisdiction is vested in this Court as this controversy involves a policy of insurance

which was issued and delivered in Louisiana. Moreover, U.S. Specialty is subject to personal

jurisdiction in this Court under the Louisiana Long Arm Statute and otherwise as U.S. Specialty

1

ELECTRONICALLY FILED
2026 Mar 24 12:36 PM
00070437
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

does business in Louisiana, is licensed to sell insurance in Louisiana, and sold and delivered the policy at issue in this State.

4.    Venue is proper in this Court pursuant to La. C.C.P. art. 76 because the insured is domiciled in this judicial district, the insurance policy at issue was issued and delivered in this judicial district, this judicial district was the place where U.S. Specialty was required to perform the obligations at issue, and part or all of the losses at issues occurred in this judicial district.

## FACTUAL BACKGROUND

5.    The Madere family has been a local area leader in the oilfield service industry since 1981 when they established Madere, Inc. (now Madere, L.L.C.). In 1996, the Madere family established Madere & Sons Towing which offers services such as marine logistics, towing, and barge rentals. In 2013, the Madere family founded Deep South as a sister company of Madere & Sons, which provides marine construction services to the energy industry. Plaintiffs own and operate numerous vessels, including tugs and barges, to support their business operations.

6.    Madere & Sons purchased a policy of insurance with U.S. Specialty providing coverage for their vessels, equipment, and operations which included coverage for Hull & Machinery, Marine Liabilities, Marine Comprehensive Liability, and multiple layers of Bumbershoot (Excess) coverage. The policy was issued and delivered to Madere & Sons by Continental Underwriters Ltd. LLC ("Continental"), through the issuance of Cover Note CUL11918.055 (the "Policy").

7.    The Policy provided coverage for the period of May 9, 2025 through May 9, 2026 and thus was in effect at all times pertinent hereto.

8.    As alleged above, the Policy includes Hull & Machinery coverage which provides coverage for all direct physical loss and damage to the vessels scheduled in the Policy with an agreed value for each vessel. The schedule of vessels in the Policy includes the Pelto/DS-111 ("DS-111"), an inland drilling barge owned by Deep South, and provides for an "Agreed Value Insured Hereunder" of $4,000,000 for the DS-111, subject to a deductible of $35,000.

9.    Under the Policy, a constructive total loss is defined as a loss in which the costs to repair the vessel exceed the agreed value of the vessel. In the event of a constructive total loss, the

2

ELECTRONICALLY FILED
2026 Mar 24 12:36 PM
00070437
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

Policy provides for recovery of the agreed value of the vessel, together with any sue and labor expenses necessary to protect the vessel following the loss event.

10.    Deep South is listed in the Policy as the Assured and Lost Payee for the DS-111.

11.    The DS-111 caught fire on October 22, 2025 sustaining substantial damage.

12.    Deep South immediately contacted Continental on October 22, 2025 and provided notice of the fire involving DS-111.

13.    Deep South engaged United Marine Surveyors to perform a preliminary survey to determine the nature and extent of the damage to the DS-111, which was conducted on October 23, 2025. On October 24, 2025, United Marine Surveyors' Chris LaBure issued a report which provided a preliminary rough estimate of the cost of the repairs of $3.4 million.

14.    On October 28, 2025, in connection with adjusting the claim on behalf of U.S. Specialty, Continental advised Plaintiffs that it intended to conduct a "cause and origin" fire investigation of the DS-111 and provided notice that Rick Jones of Forensics Investigative Group ("FIG") would perform the investigation.

15.    FIG issued a report provided to Continental on November 4, 2025. The FIG report noted that an inspection of an electrical cabinet involved in the fire revealed the presence of dried vegetation consistent with rodent nesting and concluded that the fire likely resulted from damage to electrical conductors caused by the rodents. The FIG report thus demonstrated that the likely cause of the fire was a covered cause under the Policy. Nonetheless, Continental and U.S. Specialty failed to promptly adjust the claim and Continental in fact did not share the FIG report with Plaintiffs until December 1, 2025, and only after it was requested by Deep South.

16.    On December 10, 2025, Continental directed United Marine Surveyors to issue formal bid requests for repairs to the DS-111.

17.    On December 12, 2025, Bollinger Mississippi Repair, LLC ("Bollinger") responded to the Continental's bid request and explained that while the extent of the damage shown in the photographs forwarded for review did not allow for a detailed and lengthy report for the $1,000 fee offered by Continental, Bollinger estimated that repairs would be in the range of $20,000,000 (plus/minus 20%) based on Bollinger's experience with similar previous projects. Thus, the Bollinger estimate confirmed that the costs to repair the vessel would clearly exceed the

ELECTRONICALLY FILED
2026 Mar 24 12:36 PM
00070437
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

Policy's agreed value for the vessel of $4,000,000 and rendered the vessel a constructive total loss under the Policy's terms and conditions.

18. Rather than promptly acknowledging the scope of loss under the Policy, Continental without notice to Deep South sent several contractors to Deep South's shipyard in Harvey on December 18, 2025, who boarded the DS-111 without permission and in violation of Deep South's company policy requiring that third parties execute boarding agreements and confirm they have appropriate insurance before entering Deep South's shipyard and accessing its vessels.

19. Mr. LaBure conducted an additional inspection of the DS-111 on December 19, 2025 at the request of Deep South and Continental for the purpose of further evaluating the general condition of the vessel and providing a residual valuation for the vessel.

20. On January 4, 2026, Mr. LaBure issued a supplemental report cataloging the damage to the DS-111 and its equipment, as well as the condition of the generators, main engines, and air compressors aboard the DS-111.

21. In connection with his inspection, Mr. LaBure identified numerous compartments in the vessel that had been contaminated by oil water as a result of the efforts to extinguish the fire.

22. Mr. LaBure further concluded in his January 4 report that the cost of refurbishing the vessel's drilling equipment in order to return it to operational status was not economically practical. He also noted that while the DS-111's equipment had salvage value, the salvage value would be exceeded by the labor costs to remove the equipment from the vessel.

23. Likewise, with respect to the equipment in the DS-111's deckhouse, including the generators, main engines and air compressors, Mr. LaBure concluded that any residual value of these components would likely be offset by the labor costs of assessing and confirming the condition of the equipment.

24. Mr. LaBure estimated the present day market value of the DS-111 (excluding its machinery and drilling equipment) to be $304,000. He further noted that almost all responses to Continental's request for repair bids required significant pre-payments, which in some instances were nearly equal to his estimated market value of the vessel. As alleged above, the only repair

ELECTRONICALLY FILED
2026 Mar 24 12:36 PM
00070437
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

response that did not require a substantial pre-payment was from Bollinger which estimated repairs would be in the range of $20 million dwarfing the $4,000,000 agreed value for the vessel.

25.     On December 19, 2025, Continental advised Deep South that it would be directing FIG to conduct an additional investigation to determine the specific cause of the fire but failed to provide any explanation as to why it doubted FIG's initial findings that the fire was caused by rodents.

26.     FIG performed an additional investigation of the vessel on January 6, 2026. On January 13, 2026, Continental forwarded to Deep South the supplemental file materials related to this additional investigation, while noting that Continental expected receipt of further reporting from FIG regarding the proximate cause of the fire. However, the FIG representative who performed the January 6 inspection confirmed to Deep South that he was 100% certain an opossum caused the fire on the DS-111 and FIG issued a summary of findings dated January 14, 2026 confirming the cause of the accident. Continental, however, did not provide FIG's findings to Deep South until February 6, 2026. In any event, FIG's conclusions simply confirmed what was already known since FIG's initial November 4 report – namely, that the cause of the fire was a rodent and a covered cause under the Policy.

27.     Moreover, in its January 13 correspondence, Continental specifically advised Deep South that: "As *we* are unlikely to receive a repair bid for the DS-111, *we* are seeking out alternative means to value repairs," thereby acknowledging that it was the underwriters' burden under the Policy to prove the value of the repairs to the DS-111.

28.     On or around January 20, 2026, Deep South became aware that Continental had been attempting to market the DS-111 for sale, which Continental/U.S. Specialty would have no reason to do absent the conclusion that the vessel was a constructive total loss under the Policy. Continental and U.S. Specialty, however, still inexplicably failed to declare the vessel a constructive total loss and pay Deep South the agreed value in accordance with the Policy.

29.     On January 28, 2026, Deep South wrote to Continental and provided a detailed overview of the course of events that had transpired since the loss event and demanded that: (1) the DS-111 be declared a constructive total loss; and (2) U.S. Specialty make prompt payment as

ELECTRONICALLY FILED
2026 Mar 24 12:36 PM
00070437
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

required under the Policy, accept full and complete responsibility for the removal and disposal of the DS-111, and coordinate an acceptable plan to carry out its obligations under the Policy.

30.     On February 11, 2026, Deep South sent follow-up correspondence to Continental reiterating that satisfactory proof of claim had been submitted on January 28 and requesting that payment be made within 30 days from submission of the claim (i.e., by February 27, 2026).

31.     U.S. Specialty failed to make payment and comply with its obligations under the Policy by the deadline of February 27. Instead, on March 9, Continental/U.S. Specialty demanded, for the first time, that Deep South provide satisfactory proof of loss exceeding the $4 million agreed value for the DS-111 and making the false assertion that Deep South had agreed to provide a repair estimate demonstrating that the scope of repairs would exceed the agreed value of the DS-111. In addition to being untrue and an attempt by the underwriters to improperly foist the burden of proving the cost of repairs on the insured, Continental's statement was totally contradictory to its previous acknowledgment on January 13 that the underwriters bore the burden to prove the value of repairs for the purpose of determining constructive total loss.

32.     The March 9 response provided by U.S Specialty is further disingenuous because it totally ignored that Deep South had provided multiple surveys from Mr. LaBure, together with the $20 million repair estimate from a highly-reputable vessel repair contractor, all of which clearly confirmed that the DS-111 was a constructive total loss.

33.     Since March 9, Plaintiffs have made numerous additional pleas to Continental/U.S. Specialty that it comply with its obligations under the Policy which clearly responds to and provides cover for the fire damage sustained by the DS-111.

34.     Because of Defendant's failure to timely adjust and respond to the claim, the inoperable DS-111 remains at Plaintiffs' Harvey shipyard and presents a significant liability, pollution, and salvage/sinking/wreck removal hazard. As a consequence, the United States Coast Guard has repeatedly demanded that Plaintiffs provide a clear plan to address DS-111, which Plaintiffs have thus far been unable to provide due to the underwriters' delay.

35.     It is readily apparent that notwithstanding satisfactory proof of claim submitted by Deep South, U.S. Specialty simply refuses to acknowledge that DS-111 is a constructive total loss due to the fire.

6

ELECTRONICALLY FILED
2026 Mar 24 12:36 PM
00070437
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

36.    Based on the foregoing, U.S Specialty has failed to comply with its obligations under the Policy, and, as such, is in breach of the Policy and liable for all amounts owed under the Policy and all resulting damages.

37.    Further, U.S. Specialty's breach of the Policy was done in bad faith pursuant to La. C.C. art. 1997. Because U.S. Specialty is an obligor in bad faith, Plaintiffs are entitled to recover all damages, foreseeable or not, that are a direct consequence of U.S. Specialty's failure to fulfill its duties and obligations under the Policy, including attorneys' fees and costs incurred in this proceeding.

38.    U.S. Specialty was also obligated, pursuant to applicable law, including La. R.S. § 22:1892(A)(1), to pay or offer to settle any amounts owed under the Policy within thirty (30) days of its receipt of satisfactory proof of loss from Deep South on January 28. Defendant has failed to remit payment for, or offer to settle, the damages described herein within the time frame mandated by Louisiana law.

39.    U.S. Specialty's continued refusal to pay Plaintiffs the amounts due under the Policy was and is arbitrary, capricious, and without probable cause.  Therefore, and pursuant to applicable law, including La. R.S. § 22:1892(B)(1), U.S. Specialty is liable for all amounts due under the Policy plus an additional 50% of the total amount that remains due and outstanding under the Policy, plus any and all economic damages sustained by Plaintiffs as a result of U.S. Specialty's arbitrary and capricious failure to pay the amounts due under the Policy, together with reasonable attorney fees and costs.

40.    In addition, pursuant to La. R.S. § 22:1892(I)(1)(a), U.S Specialty owes Plaintiffs a duty of good faith and fair dealing and had an affirmative duty to adjust the claim fairly and promptly and to make a reasonable effort to settle Plaintiff's for damages resulting from the covered loss event involving the DS-111, and is liable to Plaintiffs for all damages sustained as a result of its breach of the duty of good faith and fair dealing.

41.    Defendant breached the duties of good faith and fair dealing owed to Plaintiffs under the Policy and La. R.S. § 22:1892(I)(1)(a), and also breached its affirmative duty to adjust claims fairly and promptly when U.S Specialty failed to promptly pay Plaintiffs within the period provided by law after its receipt of satisfactory proof of loss which was provided to U.S Specialty

ELECTRONICALLY FILED
2026 Mar 24 12:36 PM
00070437
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

no later than January 28, 2026. This breach and failure by U.S. Specialty was arbitrary, capricious, and without probable cause. Pursuant to La. R.S. § 22:1892(I)(1)(a), U.S. Specialty is liable for penalties in the amount of fifty percent (50%) of the damages sustained by Plaintiffs, together with attorneys fees and costs, as a result of Defendant's breach of its duties under the Policy and Louisiana law.

42.     As a direct result of Defendant's actions alleged above, Plaintiffs have sustained substantial damages including increased costs of operations resulting from U.S. Specialty's failure to timely adjust and pay the amounts due under the Policy, loss of the use of the funds covered by and which should have been timely paid out under the Policy, loss of income, other financial damages, attorneys' fees, professional fees, and other damages to be proven at trial.

## JURY DEMAND

43.     Plaintiffs hereby request trial by jury of all claims and issues asserted herein.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs Madere & Sons Towing, L.L.C. and Deep South Construction & Salvage, L.L.C. pray that Defendant, U.S. Specialty Insurance Company, be duly cited to appear and that, after all due and legal delays and legal proceedings are had, there be judgment in favor of Plaintiffs and against Defendant as follows:

(i)     All amounts due under the Policy, including but not limited to the agreed value of the DS-111 of $4,000,000 plus all sue and labor expenses incurred by Plaintiffs in responding to and dealing with the loss;

(ii)    All statutory penalties and attorney's fees provided for by La. R.S. § 22:1892;

(iii)   All damages resulting from Defendant's breach of its duties, including attorneys' fees, statutory penalties, costs of these proceedings and pre-judgment and post-judgment interest thereon; and

(iv)    Any and all other equitable and general relief allowed under the Policy and applicable law.

Respectfully submitted,

/s/Nicholas H. Berg
Nicholas H. Berg (33006)
W. Spencer King (35863)
BERG + KING LLC
1100 Poydras Street, Suite 2200
New Orleans, Louisiana 70163
Telephone: (504) 688-4402
Email: nick@berglaw.us
Email: sking@berglaw.us

ELECTRONICALLY FILED
2026 Mar 24 12:36 PM
00070437
Plaquemines Parish LA - 25th JDC
Kim Turlich-Vaughan, Clerk of Court

&

Edward F. Kohnke, IV, (7824)
13590 Hwy. 1077
Folsom, La. 70437
Telephone: (504) 451-8161
Email: edwardkohnke@gmail.com

*Attorneys for Plaintiffs Madere & Sons Towing, L.L.C. and Deep South Construction & Salvage, L.L.C.*

**PLEASE SERVE**

U.S. Specialty Insurance Company
*Through its Registered Agent:*
Louisiana Secretary of State
8585 Archives Ave.
Baton Rouge, LA 70809